IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | CASE NOS. 2:14-CR-127-ALM-9 |
| : | 2:06-CR-264-ALM |
| Plaintiff, : | |
| : | CHIEF JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | |
| THOMAS E. COATES, : | |
| : | |
| Defendant. : | |

**OPINION & ORDER**

This matter comes before this Court on Defendant Thomas E. Coates's Motion to Dismiss Petition to Revoke Supervised Release (ECF No. 1769). For the following reasons, Defendant's Motion is **GRANTED in part and DENIED in part**. This Court will hold Defendant's supervised release revocation hearing on **August 19, 2022, at 11:15 a.m**.

Given this disposition, Defendant's Motion for Supervised Release Hearing (ECF No. 1783) is **DENIED as moot**. Similarly, the versions of these motions inadvertently filed in Defendant's unrelated criminal case, *see United States v. Thomas Coates*, Case No. 2:06-cr-264 (S.D. Ohio); ECF Nos. 72, 73, are also **DENIED as moot**.

**I. BACKGROUND**

On July 17, 2020, Defendant Thomas Coates began serving a term of thirty-six months of supervised release after completing eighty-four months of incarceration for Conspiracy to Commit Racketeering in violation of Title 18 U.S.C. § 1962(d). (ECF No. 1747 at 1). In July 2021, Defendant was indicted and charged in the Franklin County Common Pleas Court with several counts related to the possession and trafficking of cocaine and fentanyl. (*Id.* at 2). Due to the

1

circumstances surrounding these new charges and other alleged violations of the terms of his release, United States Probation petitioned the Court on August 11, 2021, to issue a warrant to revoke Defendant's supervised release. (*Id.*). Finding probable cause that Defendant violated the conditions of his supervised release, this Court issued a warrant for his arrest. (*Id.* at 3).

In its Supervised Release Violation Report, United States Probation documented Defendant's adjustment to supervision, categorizing it as poor.[1] *See United States v. Thomas Coates*, Case No. 2:06-cr-264 (S.D. Ohio); ECF No. 61 at 5. Probation noted that in October 2020, Defendant left the Southern District of Ohio without permission, leading to a court-ordered sanction of ninety days of location monitoring. (*Id.*). Then, in March 2021, Defendant was identified by an eyewitness as the shooter in a drive-by shooting, although subsequent charges for felonious assault were dismissed. (*Id.*). On April 26, 2021, Defendant tested positive for marijuana. (*Id.*). Finally, Probation reports that Defendant has not attempted to seek employment since his release. (*Id.*). Based on his history of non-compliance with supervised release and in light of Defendant's new charges, Probation recommended a sentence of twenty-four months, to run consecutive to any state sentence imposed in Case No: 2021CR003012, with no further term of supervised release. (*Id.* at 6). When the Petition was filed, Defendant was detained at the Jackson Pike Franklin County Correctional Center for the charges in his State of Ohio case. (*Id.* at 4).

Defendant posted bond in his state case in November 2021 and was released pending trial. (ECF No. 1771 at 2). Shortly thereafter, the arrest warrant from the above captioned case was executed, and, on November 29, 2021, Defendant appeared before the Magistrate Judge for his initial appearance. (ECF No. 1748). At that appearance, ruling on the Government's Oral Motion

---

[1] As detailed below, the Supervised Release Violation Report and Arrest Warrant were mistakenly filed in another one of Defendant's cases. *See United States v. Thomas Coates*, Case No. 2:06-cr-264 (S.D. Ohio); ECF No. 61. That issue has been since been resolved.

for Detention, the Magistrate Judge ordered Defendant be detained pending his preliminary supervised release revocation hearing. (*Id*.). Defendant subsequently chose to waive his preliminary hearing, and was ordered detained, pending the final supervised release revocation hearing. (ECF No. 1752). The Magistrate Judge reasoned that detention was appropriate considering Defendant "failed to produce clear and convincing evidence that he will not flee or pose a danger to any person or the community." (*Id*. at 1). As of the date of this Opinion and Order, no final supervised release revocation hearing has been scheduled.

Defendant has now filed a Motion to Dismiss Petition to Revoke Supervised Release. (ECF No. 1769). Notably, defense counsel inadvertently filed this Motion in Defendants' previous case in this Court. *See United States v. Thomas Coates*, Case No. 2:06-cr-264 (S.D. Ohio); ECF No. 72. The Motion was refiled under the current case on April 11, 2022. (ECF No. 1769). The Government responded to Defendant's Motion on April 14, 2022 (ECF No. 1771), and Defendant timely replied (ECF No. 1773), making the Motion ripe for review.

## II. LAW & ANALYSIS

Before delving into the substantive arguments in Defendant's Motion, this Court addresses a preliminary matter relating to Defendant's previous unrelated case in this Court. As highlighted earlier, the petition was mistakenly filed in one of Defendant's unrelated, previous cases in this Court. *See United States v. Thomas Coates*, Case No. 2:06-cr-264; ECF No. 61. This was corrected on November 29, 2021, when the petition was amended and correctly filed under the above captioned case. (*See* ECF No. 1747). Defendant briefly argues that this mistake renders the warrant invalid. (*See* ECF No. 1796 at 3, n.1). This Court rejects that argument.

From this Court's review, the original warrant met all the requirements of a valid warrant. It was supported by oath or affirmation and described the person to be seized. U.S. Const. amend

3

IV. Furthermore, it was also signed by "a neutral and detached" magistrate "capable of determining whether probable cause exists for the requested arrest." *Shadwick v. Tampa*, 407 U.S. 345, 349 (1972). The only error was in its filing, which was amended around the time that Defendant was taken into federal custody. As such, the warrant remains valid.

## A. The Parties' Arguments

Defendant argues that—whether considering his entire detention or only his time in federal custody—he has been denied his right to a timely supervised release revocation hearing. (*See* ECF No. 1769 at 3; *see also* ECF 1773 at 1–2). Defendant recognizes that for this Court to find these rights have been violated, any delay in holding his revocation hearing must have caused him to suffer prejudice. (*See* ECF No. 1769 at 6). He argues he has suffered such prejudice for three reasons (*Id.* at 7). First, Defendant claims that his detention has prevented him from obtaining substitute counsel for his state case, which he says has led him to miss scheduled hearings and has kept him from reviewing discovery materials. (*Id.*). Second, Defendant argues that his continued detention is prejudicial, given the unsanitary and crowded conditions of the facility in which he is currently incarcerated. (*Id.* at 7–8). Third, Defendant says that despite requesting to be vaccinated for COVID-19 in January 2022, he has, as of the date of his Motion, not yet received a vaccine. (*Id.* at 8). As relief, Defendant seemingly asks for two incongruent remedies. In his initial Motion, Defendant asks that this Court dismiss the Petition to Revoke Supervised Release and order his immediate release. (*Id.* at 3). In his reply brief, however, Defendant changes course and requests that his supervised release revocation hearing be held as soon as possible. (ECF No. 1773 at 3).

In response, the Government agrees that Rule 32.1 "does establish that the Court 'must hold the revocation hearing within a reasonable time in the district having jurisdiction,'" but it points out that the Rule "does not establish what is a 'reasonable time.'" (*Id.* at 3 (quoting Fed. R.

Crim. P. 32.1)). The Government disagrees with Defendant's calculation of his time in detention and argues that he was not detained in federal custody until November 2021 when the warrant issued by this Court was executed. (*Id.* at 2). It was at that point, the Government notes, that the procedural safeguards of the Due Process Clause were triggered. (*Id.* at 3 (citing *United States v. Ivy*, 678 Fed. Appx. 369, 372–73 (6th Cir. 2017); *Moody v. Daggett*, 429 U.S. 78, 87 (1976))). The length of Defendant's detainment, the Government says, is not unreasonable. (*Id.* at 4). Further, the Government believes that Defendant fails to show prejudice. (*Id.*). It argues that Defendant fails to explain why being detained has prevented him from participating in his state case when other detained defendants are almost always able to defend themselves in legal proceedings. (*Id.* at 5). Finally, the Government finds fault with Defendant's argument regarding a COVID-19 vaccination. The Government asserts that Defendant has not explained why he was not vaccinated prior to his arrest and gives credit to the jail's history of vaccinating inmates during the COVID-19 pandemic. (*Id.* at 4).

### B.  Court's Analysis

While individuals facing supervised release revocation are generally protected by the safeguards of due process, they do not enjoy the "'full panoply of rights' normally due to defendants facing criminal charges." *Ivy*, 678 Fed. Appx. at 372 (quoting *Morrissey v. Brewer*, 408 U.S. 471 (1972)). "This is so because revocation deprives the parolee—or in this case, the individual on supervised release—'not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent' on his compliance with certain restrictions." *Id.* An individual alleged to have violated supervised release, is not held to have lost their liberty until the they are taken into custody on the warrant underpinning the alleged supervised release violation. *Id*. at 373.

Individuals facing supervised release revocation are entitled to both a preliminary supervised release revocation hearing[2] and a final supervised release revocation hearing. *Morrissey*, 408 U.S. at 485. At the final hearing, a defendant is entitled to:

(1) written notice of the alleged violation;

(2) disclosure of the evidence against the person;

(3) an opportunity to appear, present evidence, and question any adverse witness;

(4) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and

(5) an opportunity to make a statement and present any information in mitigation.

Fed. R. Crim. P. 32.1(b)(2)(A)–(E). Rule 32.1 explicitly mandates that, unless waived, a final revocation hearing must be held "within a reasonable time in the district having jurisdiction." Fed. R. Crim. P. 32.1(b)(2). While the Rule does not define what constitutes a reasonable time, the Sixth Circuit has held that "a 'defendant's due process concerns' over delayed revocation proceedings 'come into play only when the delay has prejudiced the defendant's ability to contest the validity of the revocation.'" *Ivy*, 678 Fed. Appx. at 374 (quoting *United States v. Throneburg*, 87 F.3d 851, 853 (6th Cir. 1996)). The Sixth Circuit has also made clear that potentially negative sentencing consequences do not create prejudice. *Id*. at n.2 (noting that defendant "cite[d] no authority for the proposition that a delay that may affect one's ability to serve sentences concurrently [] implicates due process").

The Government represents that holding the final revocation before Defendant's state charges are adjudicated would be premature, as these charges are the primary basis for the petition to revoke supervised release. (ECF No. 1771 at 5). Defendant has been detained in federal custody

---

[2] Defendant waived his right to a preliminary supervised release revocation hearing. (ECF No. 1750 ("I agree to waive my right to a preliminary hearing under . . . Fed. R. Crim. P. 32.1.")).

6

for roughly seven months and his state case is not set to be adjudicated until at least September 2022. (*See* ECF No. 1783 at ¶ 6). The Sixth Circuit has not spoken directly on the appropriateness of waiting for a defendant's state court charges to be adjudicated before moving forward with a revocation hearing.[3] The Third Circuit has held that such a delay can be reasonable as the adjudication of those charges "might be relevant in the revocation proceeding." *United States v. Poellnitz*, 372 F.3d 562 (3d Cir. 2004). The First Circuit has similarly recognized that this course of action is reasonable but has recognized that "a district court cannot leave an offender in limbo indefinitely while waiting for a state court to adjudicate a counterpart criminal charge." *United States v. Pagan-Rodriguez*, 600 F.3d 39, 42 (1st Cir. 2010) (recognizing that "supervised release is itself a valuable commodity").

This Court finds the First and Third Circuits' reasoning compelling. In his state court case, Defendant is charged with fourteen different counts related to drug possession, drug trafficking, robbery, and firearm possession. (*See* ECF No. 1771 at 1–2). Given the relevance of the adjudication of Defendant's state court charges, as well as their known seriousness and robustness, the current abeyance in holding Defendant's final supervised release revocation hearing has not been unreasonable. *See Poellnitz*, 372 F.3d at 571 ("Although it is not necessary that the probationer be adjudged guilty of a crime to revoke release . . . it is certainly understandable that the District Court waited for adjudication of these state charges because it might be relevant in the revocation proceeding.").

---

[3] The Sixth Circuit jurisprudence on the timeliness of a supervised release revocation hearing generally involves circumstances where a defendant had not yet been taken into federal custody. *See, e.g., Cotten v. Davis*, 215 F. App'x 464 (6th Cir. 2007). In *Cotten*, the Court held that a right to timely revocation hearing is not triggered until the defendant is taken into federal custody on the warrant issued from the petition to revoke supervised release. *Id.* at 467. Here, as Defendant is already in custody on the warrant issued from the petition to revoke supervised release, these cases are inapplicable.

7

Furthermore, this Court finds that the seven-month delay has not prejudiced Defendant's ability to contest the validity of the revocation. First, this Court finds Defendant's arguments on his alleged inability to adequately participate in his state case not well taken. From its review of the record, this Court sees no evidence showing why Defendant's detention alone should prevent him from finding counsel or participating himself. Even if such evidence existed, it concerns Defendant's ability to litigate his state charges, **not** his ability to contest the validity of the revocation. In fact, as made clear by the multiple filings relating thereto, Defendant has clearly not been deprived of his ability to contest his revocation. Second, the conditions of Jackson Pike Jail, while perhaps uncomfortable, do not create prejudice. The avenue for remedying these alleged inadequate conditions is not through a dismissal of the petition to revoke supervised release. Third, regarding Defendant's COVID-19 vaccination status, the fact that his request to be vaccinated has not yet been met is not sufficiently related to the delay in holding his supervised release revocation hearing as to create prejudice.[4] Ultimately, Defendant has shown neither that the delay in holding his supervised release violation hearing was unreasonable nor that the delay has prejudiced his ability to contest the validity of the revocation. As such, dismissal of the petition and underlaying warrant is inappropriate.

This Court will not, however, leave Defendant "in limbo indefinitely while waiting for [the] state court to adjudicate" those charges. *See Pagan-Rodriguez*, 600 F.3d at 42. While the delay in holding this hearing has not yet become unreasonable, it may rapidly become so. *Id*. (holding the District Court "waited too long before holding the final revocation hearing[,]" where

---

[4] This Court recognizes that there are circumstances under which court intervention is appropriate where a defendant can show that he has not been given the vaccine despite requesting one. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). Accordingly, if as of the date of this Opinion and Order Defendant has still not received the Covid-19 vaccine, he is to inform the court immediately.

8

the delay was nearly one year). To ensure that this does not occur, Defendant's Final Supervised Release Revocation hearing is hereby scheduled for **August 19, 2022, at 11:15 a.m**.

### III. CONCLUSION

Pursuant to the foregoing analysis, Defendant's Motion (ECF No. 1769) is **GRANTED in part and DENIED in part**. Defendant's Final Supervised Release Revocation hearing is set for **August 19, 2022, at 11:15 a.m**.

Given this disposition, Defendant's Motion for Supervised Release Hearing (ECF No. 1783) is **DENIED as moot**. The versions of these motions inadvertently filed in Defendant's unrelated criminal case, *see United States v. Thomas Coates*, Case No. 2:06-cr-264 (S.D. Ohio), ECF Nos. 72, 73, are also **DENIED as moot**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: July 8, 2022**